UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
NUGENE AMBERS,

        *Petitioner*,

      -against-

JOHN COLVIN, Superintendent,
Five Points Correctional Facility,

       *Respondent*.
----------------------------------X

**MEMORANDUM & ORDER**

16-CV-5326 (KAM)

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

      *Pro se* petitioner Nugene Ambers ("petitioner"),

currently incarcerated at Elmira Correctional Facility,[1] seeks a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging

his convictions of Course of Sexual Conduct Against a Child in

the First Degree, Course of Sexual Conduct Against a Child in

the Second Degree, Rape in the Second Degree, and two counts of

Endangering the Welfare of a Child, for which he was sentenced

to seventeen years' of imprisonment by the Supreme Court of the

State of New York in Kings County. (*See* ECF No. 1, Petition for

Writ of Habeas Corpus ("Pet.") 1.)[2] For the reasons set forth

below, the petition is denied in its entirety.

---

[1]    When petitioner brought this action, he was incarcerated at the Five
Points Correctional Facility in the custody of Superintendent John Colvin.
(Pet. 1.) He then notified the court on January 23, 2017, that he was moved
to Elmira Correctional Facility and that a "Mr. Chappia" served as the
Superintendent to that facility. (*See* ECF No. 16, Letter.) Petitioner did
not move to amend the caption.
[2]    Citations to the petition refer to the pagination as designated by the
court's Electronic Case Filing ("ECF") system. All other record citations,
unless indicated otherwise, refer to original pagination.

## I.  Factual Background

In 1996, petitioner met V.M., mother to three daughters from a previous marriage, and the two began a romantic relationship.[4]  (ECF No. 12, Resp't's Opp'n ("Opp."), Ex. A, Trial Tr. ("Tr.") 652.)  Petitioner and V.M. married in 1997 while petitioner was incarcerated for an unrelated crime.  (*Id.* at 653, 828, 862.)  Upon his release in 2012, petitioner moved in with V.M. and her daughters.  (*Id.* at 654, 828—30, 863.)

Two of V.M.'s daughters, S.M. and A.M., are the victims of petitioner's offense conduct.  (*Id.* at 392—94.)  Beginning in 2003, when S.M. was eleven years old and A.M. was nine, petitioner subjected both girls to numerous instances of sexual abuse.  (*Id.* at 415, 418—20, 548—52.)  Between September 2003 and August 2006, petitioner groped S.M., put his penis in her mouth, rubbed his genitals against hers, penetrated her vagina with his fingers, and in one instance, penetrated her vagina with his penis.  (*Id.* at 415—20, 422—24, 456, 461.)  Between January 2003 and April 2007, petitioner also groped A.M., rubbed his genitals against her, and asked A.M. to rub his

---

[3]     The following summary of facts and procedural history is primarily compiled from the parties' submissions and transcripts of petitioner's hearing and trial in New York State Supreme Court.
[4]     The victims and their relatives will be referred to by their initials throughout this order, as they were similarly referred to in the parties' subsequent submissions.

penis, among other acts.  (*Id.* at 548—49, 553, 578—81.)

Petitioner's sexual abuse continued until S.M. was nearly

fourteen years old and A.M. was thirteen, when both girls left

home to live with their grandmother.  (*Id.* at 422, 425, 467,

479—83, 525, 552, 665—66.)[5]

In May 2010, S.M. and A.M. told their aunt and

grandmother about petitioner's sexual abuse.  (*Id.* 429, 498—99,

505, 515—17, 528.)  Petitioner was arrested on May 19, 2010.

(*Id.* at 667—68.)  After a police detective advised him of his

*Miranda* rights, petitioner gave an oral statement where he said

that he believed he had not improperly touched his stepchildren,

but he could not be sure because he had problems with drinking.

(*Id.* at 873—74.)

## II.  Petitioner's July 2011 Trial

### A.   Trial testimony

Petitioner's trial commenced on July 21, 2011.[6]  (*Id.*

at 14.)  Both S.M. and A.M. testified to numerous instances of

sexual abuse perpetrated by petitioner during the period from

2003 to 2007.  (*Id.* at 415, 418—20, 548—52.)  This included

petitioner groping and rubbing his genitals against both girls,

asking the girls to rub his penis or watch him ejaculate, and

---

[5]    A.M. moved in with her grandmother about a year after S.M. had moved
out of petitioner and V.M.'s home.  (Tr. 525, 552.)
[6]    Petitioner was represented by Paul S. Montgomery, Esq. of the Legal Aid
Society at his pre-trial hearings, trial, and sentencing.  (Pet. 13.)

penetrating S.M.'s vagina with his penis. (*Id.* at 415—20, 422—
24, 456, 461, 548—49, 553, 578—81.)

The prosecution also presented Dr. Jamie Hoffman-
Rosenfeld, a child abuse pediatrician who examined the victims.
Dr. Hoffman-Rosenfeld testified that it was her opinion that the
girls presented with a history of sexual abuse, and that her
physical examination of either child did not prove or disprove
that either was sexually abused. (*Id.* at 720—28, 746.) Dr.
Hoffman-Rosenfeld's file for S.M. showed that the girl reported
a history of "penis to her mouth, her genitalia and the buttock,
anus region. And that the contact between penis and genitalia
caused pain and bleeding." (*Id.* at 741.) The file for A.M.
showed that the girl reported a history of being "touched on her
breasts, her genital region and . . . buttocks over her
clothing." (*Id.* at 745.) Dr. Hoffman-Rosenfeld testified that
the lack of physical evidence of abuse neither proved nor
disproved that sexual abuse took place, because abuse may not
lead to physical injuries or physical injuries might have healed
with time. (*Id.* at 761.) Further, Dr. Hoffman-Rosenfeld
testified she was only aware of sexually transmitted diseases
being passed onto abuse victims in about five percent of cases.
(*Id.* at 733.)

As part of the prosecution's case, V.M. testified that
between 2003 and 2007, petitioner consumed about three 40-ounce

bottles of beer every day.  (*Id.* at 664—65.)  The prosecution
also presented petitioner's statement to the police following
his arrest, where he said he had a drinking problem and consumed
at least 200 ounces of beer per day.  (*Id.* at 873—74.)  In this
statement, petitioner also said that he had many blackouts and
near-death experiences from drinking.  (*Id.* at 873.)

Petitioner testified at trial that he had never
sexually abused his step-daughters.  (*Id.* at 848—51.)  Instead,
petitioner believed S.M. and A.M. had fabricated charges against
him as retaliation for his strict parenting style.  (*Id.* at 855,
872—73.)

### B.    Defense summation

At summation, defense counsel argued that S.M.'s and
A.M.'s testimony should not be believed because there was no
corroborating physical evidence of sexual abuse.  (*Id.* at 898,
900, 902.)  Counsel further argued that no inference supporting
abuse could be drawn from Dr. Hoffman-Rosenfeld's testimony,
because she found no physical evidence of abuse.  (*Id.* at 900-
01.)  Defense counsel also argued that S.M. and A.M. were not
credible because they had not made a prompt charge against the
petitioner and had changed the dates associated with their
abuse.  (*Id.* at 808—09, 891, 893—98, 902.)  Instead, counsel
argued, S.M. and A.M. had fabricated the charges as retaliation
for petitioner's strict parenting style.  (*Id.* at 884—89, 902.)

Last, counsel argued that petitioner's drinking precluded him from committing the alleged abuse, because he typically fell asleep in the evening while watching television. (*Id.* at 900.) The prosecution objected twice during defense counsel's summation, but neither was sustained. (*Id.* at 892, 897.)

### C.  Prosecution's Summation

In the prosecutor's summation, she argued that there was sufficient evidence to find the petitioner guilty beyond a reasonable doubt for all charges. (*Id.* at 932—33.)  Regarding the victims' words and demeanor at trial, she argued, "If they were able to fake those emotions that you saw, then, I submit to you, that they both deserve an Oscar." (*Id.* at 919.)  The prosecutor also questioned the petitioner's credibility, describing him as a "two-time convicted felon, a raging drunk, a fall-down drunk who had missed his own son's birthday" and who had been "five years imprisoned." (*Id.* at 911.)  She stated that the petitioner stole S.M.'s innocence and took her virginity. (*Id.* at 917.)

The prosecutor also represented that Dr. Hoffman-Rosenfeld's opinion was that S.M. and A.M. had been sexually abused, and that her opinion was supported by the victims' medical histories. (*Id.* at 931.)  The prosecutor stated, "[Dr. Hoffman-Rosenfeld] told you that the lack of medical injury to

[S.M.] does not negate the fact that she was raped." (*Id.* at 931—32.)

The prosecutor further argued that the petitioner's drinking did not prevent him from committing sexual abuse. (*Id.* at 926.) She stated that it was petitioner's testimony that he drank to "feel good" and "escape his problems." (*Id.*) She asked the jury, "What else would he do back then to feel good?" (*Id.*) She argued, "When people drink that much this is how they act." (*Id.*)

During the prosecutor's summation, defense counsel objected 31 times and moved for a mistrial three times.[7] (*Id.* at 904, 906, 908—11, 914—16, 918—19, 921—22, 925—27, 930—32.) Defense counsel objected twelve times to the prosecutor's statements about witness credibility, five of which were sustained. (*Id.* at 904, 910—11, 915—16, 919, 921—22.) Defense counsel also objected twice and once moved for a mistrial in response to the prosecutor's statements characterizing Dr. Hoffman-Rosenfeld's testimony. (*Id.* at 931—32.) The judge sustained both objections but denied the mistrial motion. (*Id.* at 932.) Further, defense counsel objected seven times and twice moved for a mistrial in response to the prosecutor's statements about petitioner's drinking. (*Id.* at 925—27.) Five

---

[7]    By the court's accounting, petitioner's trial counsel made 31 objections during the prosecutor's summation, not 30 as noted by the Appellate Division. *See Ambers*, 115 A.D.3d at 671.

of these objections were sustained but the motions for a
mistrial were once more denied.  (*Id.* at 926–27.)  The trial
court instructed the prosecutor to "move on."  (*Id.* at 927.)

Following the prosecutor's summation, defense counsel
moved for a mistrial based on the cumulative effect of the
prosecutor's statements.  (*Id.* at 934–35.)  Defense counsel
argued that the prosecutor's statements about Dr. Hoffman-
Rosenfeld's testimony and petitioner's drinking were not
supported by evidence in the trial record.  (*Id.*)  This motion
was also denied.  (*Id.* at 935.)  Defense counsel renewed his
motion for a mistrial prior to the judge's charge to the jury,
which the judge did not specifically rule on.  (*Id.* at 934–35.)
Instead, the judge stated that he intended to address the
prosecutor's improper summation statements in his charge to the
jury to cure any perceived harm.  (*Id.* at 936.)

### D.   Jury Instructions

In its instructions, the trial court charged the jury
to disregard any statements that the prosecutor had made in her
summation vouching for any witness's credibility.  (*Id.* at 940.)
The trial court reminded the jury that summation statements were
merely arguments and not evidence, concluding that it was solely
for the jury to determine witness credibility.  (*Id.* at 940–41.)
The court also instructed the jury that Dr. Hoffman-Rosenfeld
testified that for both victims, she did not find any physical

8

evidence to corroborate sexual abuse, but that the lack of such
evidence neither proved nor disproved the claims.  (*Id*. at 946.)
Further, the trial court instructed the jury, "contrary to the
prosecutor's comment in her closing statement, there is no
inference that can be drawn from Dr. Hoffman's findings in this
case."  (*Id*.)  The court also instructed the jury that it could
not use the petitioner's prior convictions as proof that he
committed the crimes that he was presently charged with, but
only to assist in evaluating his credibility.  (*Id*. at 947.)
Last, the trial court instructed the jury that no witness
testified that the petitioner was under the influence of alcohol
during the alleged incidents of sexual abuse, and instructed the
jury to disregard the prosecutor's summation statements as to
this effect.  (*Id*. at 951—52.)  Following the jury charge,
defense counsel did not object or renew his mistrial motion.
(*Id.* at 967.)

### E.  Verdict and Sentencing

The jury found petitioner guilty of committing one
count of a Course of Sexual Conduct Against a Child in the First
Degree, one count of a Course of Sexual Conduct Against a Child
in the Second Degree, one count of Rape in the Second Degree,
and two counts of Endangering the Welfare of a Child.  (*Id.* at
990—91.)

Prior to sentencing, defense counsel moved for the court to set aside the jury's verdict based on the prosecutor's statements during her summation, which counsel claimed violated the petitioner's Fourteenth Amendment rights to a fair trial. (ECF No. 14-7, Sent. Tr. ("Sent.") 3.[8]) Defense counsel argued that the judge's curative instructions during the jury's charge were insufficient to rectify the harm petitioner sustained as a result of these comments. (*Id.* at 3—4.) The court denied this motion. (*Id.* at 5.)

Petitioner was sentenced on September 22, 2011, and, as amended on December 14, 2011, is serving concurrent prison terms totaling seventeen years of imprisonment, followed by ten years of post-release supervision. (Opp. 3—4.)

## III. Post-Conviction Proceedings in State Court

Represented by counsel, petitioner on May 28, 2013, appealed his conviction to the New York State Supreme Court's Appellate Division, Second Department. (*See generally* ECF No. 14-8, Defendant-Appellant's Main App. Br. ("App. Br.").)[9] Petitioner challenged his conviction on the basis that he was denied his Fourteenth Amendment due process right to a fair

---

[8]     The transcript of petitioner's September 22, 2011 Sentencing begins at page 55 of the compiled State Court record filed at ECF No. 14-7. The following sentencing transcript citations are to pagination as designated on the original document.
[9]     Petitioner was represented by Mark W. Vorkink, Esq. of Appellate Advocates for his appeal to the New York State Supreme Court Appellate Division, Second Department and the New York Court of Appeals. (Pet. 13.)

trial because the counts of the conviction were not supported by legally sufficient evidence and because the prosecutor made improper statements during voir dire and summation; and his Sixth Amendment right to effective counsel because his trial counsel failed to adequately object, demand curative instructions, and make timely mistrial motions in response to the prosecutor's improper summation statements, as well as failed to move to dismiss clearly time-barred misdemeanor charges. (*Id.* at 3.)

The Appellate Division affirmed the trial court's conviction by decision and order dated March 5, 2014. *See People v. Ambers*, 115 A.D.3d 671 (N.Y. App. Div. 2014). The court determined, on the merits, that the jury's verdict was not against the weight of evidence, the prosecutor's statements during voir dire were not improper, and counsel was not ineffective for failing to make further objections or move to dismiss clearly time-barred misdemeanor charges. *Id.* The court also determined that petitioner's Fourteenth Amendment claims related to certain of the prosecutor's statements during summation were not properly preserved for appellate review, and thus failed on procedural grounds. *Id.*

Petitioner's appellate counsel then sought leave to appeal to the New York Court of Appeals on all the issues raised at the Appellate Division. *See generally People v. Ambers*, 43

N.E.3d 757 (N.Y. 2015) (No. 2011—10022). The New York Court of
Appeals granted leave and then affirmed the petitioner's
conviction by decision and order dated November 23, 2015. *See*
*id.* The Court of Appeals addressed petitioner's ineffective
assistance of counsel claim for both failing to seek to dismiss
two clearly time-barred misdemeanor charges and failing to
object to some of the prosecutor's summation statements, and
held that counsel was not ineffective. *Id.* The Court did not
address the merits of petitioner's due process claim, though it
noted the Appellate Division had held such claim was
unpreserved. *Id.* at 759.

## IV. The Instant Habeas Petition

Proceeding *pro se*, petitioner filed the instant habeas
petition on September 22, 2016, claiming that he was denied his
Sixth Amendment right to effective counsel where his counsel
failed to adequately object, demand curative instructions, and
make timely mistrial motions in response to the prosecutor's
improper summation statements as well as failed to move to
dismiss clearly time-barred misdemeanor charges. (Pet. 1—7.)
Petitioner also claimed that he was denied his Fourteenth
Amendment due process right to a fair trial when the prosecutor
made improper statements at summation. (*Id.*) Specific to his
Fourteenth Amendment claims arising from the prosecutor's
summation statements, petitioner identified as prejudicial

12

statements vouching for witness credibility, misstating expert testimony, and claiming that petitioner had abused his step-daughters while intoxicated.  (*Id.* at 3—4.)

## STANDARD OF REVIEW

A federal habeas petition brought under 28 U.S.C. § 2254 will not be granted *unless* the petitioner has "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014).  A habeas petitioner's state remedies are considered to have been exhausted when the petitioner has: "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim."  *Ramirez v. Attorney Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001); *see also Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'" (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990))).

When a claim has been exhausted, the state court's adjudication on the merits is entitled to deference on collateral review in federal court. *See Renico v. Lett*, 559 U.S. 766, 767 (2010) ("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that [they] be given the benefit of the doubt." (internal citations omitted)). As such, a federal court may only grant habeas relief when a state court's adjudication of a federal claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Clearly established federal law is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71—72 (2003). A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring). A state

court's decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The Supreme Court has emphasized a state court's application of federal law is to be evaluated according to objective reasonableness rather than subjective. *Id.* at 409—10; *see also Harrington v. Richter*, 131 S. Ct. 770, 786—87 (2011) ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

To determine whether a state court has based its decision on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), the Supreme Court has looked to whether the evidence "can fairly be read to support the [court's] factual determination." *Wood v. Allen*, 558 U.S. 290, 301—02 (2010). Factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* at 301. The reviewing court might determine that a factual determination was unreasonable, for example, where "reasonable minds could not disagree that the

trial court misapprehended or misstated material aspects of the record in making its finding," *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (citing *Wiggins v. Smith*, 539 U.S. 510, 528 (2003)), "or where the court ignored highly probative and material evidence," *id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322, 346 (2003)).

In reviewing a *pro se* habeas petition, courts should be mindful that a "document filed *pro se* is to be liberally construed, and a *pro se* [petition], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted); *see also Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) ("[D]ue to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye[.]").  As such, the court must interpret petitioner's papers as raising the strongest arguments that they suggest.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## DISCUSSION

Petitioner filed a timely habeas petition for his claims under the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA").[10] 28 U.S.C. § 2244(d). The petition is timely because the New York Court of Appeals decided petitioner's appeal on November 23, 2015, Ambers did not petition for certiorari to the United States Supreme Court, and filed this petition on September 22, 2016. *See Ambers*, 26 N.Y.3d 313 (2015); (*see also* Pet. 1, 3.).

Regarding petitioner's Sixth Amendment claims of ineffective counsel arising from defense counsel's failure to further object to prosecution's summation statements and motion to dismiss clearly time-barred misdemeanor charges, it is undisputed that petitioner exhausted these claims in state court. (Opp. 39—42.) Thus, this court need only determine whether the state court reasonably applied clearly established federal law when rejecting petitioner's claims of ineffective counsel and whether it made reasonable factual determinations regarding these claims. Applying federal law, this court reviews the state court's determination that, given the totality of circumstances, defense counsel's assistance was not so ineffective that it undermined the adversarial process and produced a result that cannot be relied upon as a just outcome.

---

[10] Under AEDPA, a one—year statute of limitations applies to all persons in the State's custody seeking a writ of habeas corpus. *See* 28 U.S.C. §2244(d). The statute of limitations runs from the latest of several possible dates, including the date on which the judgment became final by conclusion of direct review. *Id.*

Petitioner's Fourteenth Amendment claim, however, is not exhausted.[11]  The court finds that petitioner's Fourteenth Amendment claim is thus barred from review on procedural grounds, and petitioner does not argue any exception to overcome this procedural bar.  In any event, petitioner cannot establish cause for his procedural default, due to his failure to show that counsel's conduct was constitutionally defective.  Further, petitioner cannot show prejudice resulting from the errors he complains of, because the prosecutor's summation statements about witness credibility, petitioner's drinking, and medical evidence did not result in error that was so substantial as to infect the entire trial to constitutional dimensions.

---

[11]     In his appeal to the Appellate Division, petitioner also raised Fourteenth Amendment claims.  Specifically, that his due process right to a fair trial was violated because the jury's verdict was against the weight of evidence and reached by a partial jury.  *See Ambers*, 115 A.D.3d at 671—72. The Appellate Division rejected both claims.  *Id*.  Although petitioner has not specifically raised these claims to this court, if he were to attempt to do so, the claims would be procedurally barred from review, and even so, clearly fail on the merits.  The claims are procedurally barred from review because petitioner did not subsequently raise the claims to the New York Court of Appeals, and as such, has not exhausted state relief available to him.  *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  Notwithstanding the procedural bar, if this court were to review the claims on the merits, they would also fail, because as the Appellate Division found, there was no violation during voir dire that was likely to result in a biased jury, and there was substantial trial evidence that supported the verdict. *See Ambers*, 115 A.D.3d at 671—72.  Moreover, "weight of the evidence" claims are not cognizable in federal habeas petitions.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (finding "[a]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal").

I.   **Petitioner's Sixth Amendment Claim of Ineffective Assistance of Counsel**

The state court's rejection of petitioner's claim of ineffective counsel was not contrary to or an unreasonable application of clearly established federal law where counsel failed to further object to the prosecution's summation statements and failed to move to dismiss clearly time-barred misdemeanor charges.  Moreover, the court's denial was not based on an unreasonable determination of the facts.

The Supreme Court has held that to succeed on a Sixth Amendment claim for ineffective assistance of counsel, a petitioner must show that counsel's conduct so undermined the adversarial process that it cannot be relied upon as having produced a just result.  *See Strickland v. Washington*, 466 U.S. 668, 686—87 (1984).  A reviewing court must assess "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Id.* at 692.  A reviewing court must evaluate counsel's conduct in light of the totality of the circumstances that existed at the time.  *Id.* at 680.  In addition, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A "reasonable probability" is a probability "sufficient to

undermine confidence in the outcome" of the trial. *Id.* at 694.
It is not enough for a petitioner to show that some error or
errors had a "conceivable effect" on the outcome of proceedings.
*Id.* at 693.

Further, counsel is "strongly presumed" to have
rendered adequate assistance and made all significant decisions
using reasonable professional judgment. *Id.* at 690. A
reviewing court should consider that there are "countless ways
to provide effective assistance in any given case" and "even the
best criminal defense attorneys would not defend a particular
client in the same way." *Id.* at 689—80. Reviewing courts
should likewise avoid the temptation to second-guess trial
counsel or to let the "distorting effects of hindsight" cloud
its decision. *Id.* at 713. Thus, a habeas claim asserting a
Sixth Amendment violation due to ineffective counsel must pass
two levels of deference: *first*, to the state court's review of
the federal issue; and *second*, to the attorney's professional
judgment. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011).

Moreover, counsel is afforded an especially strong
presumption of adequate assistance when making tactical
decisions. *Strickland*, 466 U.S. at 689. A petitioner must
therefore overcome the presumption that, "under the
circumstances, the challenged action 'might be considered sound
trial strategy.'" *Id.* This is particularly true where a

petitioner's claim arises solely from the trial record, *i.e.*, where petitioner presents no evidence probative of counsel's conduct outside of court proceedings. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). In such cases, the reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive," and the presumption is that the decision-making was sound. *Id.* at 5—6 (citation omitted).

Where, as here, an ineffective assistance claim is primarily based on counsel's failure to object and to move to dismiss time-barred claims, the presumption that counsel acted with sound strategic rationale applies. The decision to object is primarily a strategic and tactical decision and is only rarely the basis of a successful Sixth Amendment challenge. See *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997) (describing the decision to object as primarily a matter of trial strategy and tactics); *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (describing counsel's decision to object as "virtually unchallengeable" absent exceptional grounds for doing so); *see also United States v. Luciano*, 158 F.3d 665, 660 (2d Cir. 1998) (noting that appellate courts are "ill-suited to second-guess" strategic decisions by trial counsel "unless there is no strategic or tactical justification for the course taken").

Further, the New York Court of Appeals has held that it may be reasonable strategy for a defense attorney *not* to seek dismissal of a time-barred lesser charge in order to provide the jury the opportunity to render a compromise verdict when faced with a multiple-count indictment. *See People v. Evans*, 16 N.Y.3d 571, 575 (2011) ("[I]n many cases a defendant who thinks his chances of acquittal are small may welcome giving the jury an opportunity to consider a lesser charge."); *see also People v. Satterfield*, 66 N.Y.2d 796, 836 (1985).

### A. Counsel's Failure to Further Object to the Prosecution's Summation Statements

Petitioner's first basis for claiming that he received ineffective assistance of counsel is that his trial counsel, after objecting 31 times, failed to *further* object during the prosecutor's summation statement. (Pet. 3—4; ECF No. 22, Pet'r's Reply ("Reply") 4-5.) Based on the trial record, this court agrees with the Court of Appeals' finding that while "many of the prosecutor's statements were objectionable, defense counsel's failure to object to certain comments did not render him ineffective." *Ambers*, 26 N.Y.3d at 320. Moreover, this court finds that petitioner has failed to show that, but for the claimed errors by counsel, the results of the proceeding would have been different. In addition, the court agrees with the Court of Appeals' determination that viewing the trial as a

22

whole, counsel inarguably provided petitioner meaningful
representation.  *Ambers*, 26 N.Y.3d at 320.

Counsel rendered reasonable professional assistance
during the prosecution's summation.  As the Appellate Division
recognized, "[d]uring the prosecutor's summation, defense
counsel lodged 30 objections, 15 of which were sustained."
*Ambers*, 115 A.D.3d at 671.[12]  These objections clearly targeted
the prosecutor's improper statements during summation concerning
witness credibility, petitioner's drinking, and Dr. Hoffman-
Rosenfeld's testimony, and successfully abated any harmful
effect.  (*See, e.g.*, Tr. 904, 906, 908—11, 914—16, 918—19, 921—
22, 925—27, 930—32.)  More than twenty of defense counsel's
objections were in response to the prosecutor's statements
concerning witness credibility or misstatements about evidence
in the record, twelve of which were sustained.  (*See, e.g.*, *Id.*
at 904, 910—11, 915—16, 919, 921—22, 931—32, 925—27.)  As such,
petitioner has not overcome *Strickland*'s strong presumption that
counsel's conduct falls within the wide range of reasonable
professional assistance.  486 U.S. at 689.

Further, counsel's choice not to further object to the
prosecutor's statements about witness credibility, petitioner's
drinking, or Dr. Hoffman-Rosenfeld's testimony reflects a

---

[12]    Petitioner's trial counsel made 31 objections during the prosecutor's
summation, not 30 as noted by the Appellate Division.  *See Ambers*, 115 A.D.3d
at 671; (Tr. 904, 906, 908—11, 914—16, 918—19, 921—22, 925—27, 930—32.)

reasonable professional judgment that additional objections
would belabor the point or waste time and thus turn the jury
against his client or earn the judge's ire or rebuke.  Counsel
could have reasonably decided that a mistrial motion or a
request for curative jury instructions would be more effective
in curing the prosecutor's remarks.  *See United States v.
Daniels*, 558 F.2d 122, 127 (2d Cir. 1977) ("The decision [of]
whether to object to an arguably improper remark [made in a
prosecutor's summation] or to wait and attack it in the defense
summation was strictly a matter of tactics.").  Indeed, the
record indicates counsel's dozens of objections were not
effective in stopping the prosecutor's approach.  Further,
defense counsel did in fact move for a mistrial several times
and received additional curative jury instructions, suggesting
that counsel pursued this strategy to cure any residual
prejudice from the prosecutor's remarks.  (Tr. 934—35; Sent. 3.)
Thus, and as noted by the Appellate Division, petitioner has not
disproven the absence of a strategic rationale for counsel's
behavior, and has no colorable claim.  *Ambers*, 115 A.D.3d at
671.

In addition, the prosecutor's comments that defense
counsel did not object to were not so flagrant or improper that
they would have undermined the adversarial process or amounted
to incompetence under prevailing professional norms.  *See*

24

*Strickland*, 466 U.S. at 686—87, 692.  The prosecutor's statement

that S.M. and A.M. had their virginity taken from them reflected

record testimony, as did the prosecutor's statement that

petitioner was a two-time felon.  (Tr. 904, 911.)  Regarding the

latter point, the judge clarified in his charge to the jury that

this fact could only be used to weigh witness credibility, not

to establish guilt.  (Tr. 952.)

      Considering *Strickland*'s prejudice requirement and

given the nature of the evidence against petitioner there is no

reason to believe that had counsel made even more objections

during the prosecutor's summation that the trial result would

have been different.  *See Strickland*, 466 U.S. at 689; *see also,*

*e.g., United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991)

("[G]iven the plethora of evidence against [defendant], there is

little reason to believe that alternative counsel would have

fared any better.").  At the time of the prosecutor's summation,

the jury had heard from both victims and their mother, the aunt

and grandmother to whom S.M. and A.M. reported the sexual abuse,

the police detective who took petitioner's statement, and the

prosecutor's expert witnesses.  (Tr. 406, 513, 523, 540, 650,

697 719, 767.)  Moreover, as the Court of Appeals recognized,

the trial court's charge to the jury was effective in curing any

remaining prejudice to petitioner.  *Ambers*, 26 N.Y.3d at 320.

The court's charge was specific: it identified the prosecutor's

improper statements.  (Tr. 940—41, 946—47, 951—52.)   And the charge was clear and unequivocal in what treatment the jury should give to these remarks.  (*Id.*)  Thus, petitioner has not shown that, but for counsel's alleged professional errors, the result of the proceeding would have been different, failing *Strickland*'s prejudice requirement.

Furthermore, this court agrees with the Court of Appeals that, based on the trial testimony, it is clear that counsel's representation as a whole showed him to be a knowledgeable and zealous advocate.  *Ambers*, 26 N.Y.3d at 320. Counsel requested a pre-trial hearing to avoid any propensity arguments about petitioner's previous criminal history; was effective during cross examination of the prosecution's witnesses; presented an expert witness to rebut the victims' credibility due to delayed disclosure of sexual abuse; moved for a mistrial several times; and argued for a reduced sentence for petitioner.  *Id.*

In rejecting petitioner's Sixth Amendment claim, the state court did not come to a decision contrary to federal law, unreasonably apply federal law, or make unreasonable factual determinations based on evidence in the state court proceeding. New York's meaningful representation standard is not "diametrically different, opposite in character or nature, or mutually opposed" to *Strickland*.  *See generally Rosario v.*

*Ercole*, 601 F.3d 118 (2d Cir. 2010); *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001). In addition, the Court of Appeals specifically cited *Strickland*, the relevant and applicable federal case law, and relevant New York cases. *See Ambers*, 26 N.Y.3d at 317. Moreover, the state court properly applied the relevant authority and did not reach a decision contrary to a "materially indistinguishable" Supreme Court case. *See Williams*, 529 U.S. at 413. In light of the extensive efforts by defense counsel to object during summation, his knowledgeable and zealous advocacy throughout trial, and the strong, unrebutted presumption that counsel's tactical decisions were made with reasonable professional judgment, the state court's conclusion is a reasonable application of clearly established federal law.

### B. Counsel's Failure to Bring a Motion to Dismiss Cleary Time-barred Misdemeanor Claims

Petitioner's second basis for claiming that he received ineffective counsel is that his trial attorney failed to move to dismiss two clearly time-barred misdemeanor charges for Endangering the Welfare of a Child.[13]  (Pet. 3—4; Reply 8-

---

[13]    As noted by the Court of Appeals, the statute of limitations for the class of misdemeanors at issue was two years. *See* N.Y. Penal Law § 260.10(1); N.Y. Crim. Proc. Law § 30.10(2)(c).  The criminal complaint alleged the abuse against S.M. took place between September 1, 2003 and August 30, 2006 and against A.M. between April 7, 1999 and April 6, 2007. Thus, the statute of limitations expired on August 30, 2008 and May 20, 2010, respectively.  Accordingly, both charges were time-barred. *See Ambers*, 26 N.Y.3d at 313 n.1.

11.) Based on the trial testimony, and a lack of extrinsic evidence, this court agrees with the Appellate Division and Court of Appeals' consistent findings that it may have been counsel's reasonable strategy to retain the time-barred misdemeanor charges to encourage the jury to reach a compromise verdict. *Ambers*, 115 A.D.3d at 671; 26 N.Y.3d at 320. Further, the court finds that petitioner has failed to show that but for the claimed error by counsel, the results of the proceeding would have been different. The court also agrees with the Court of Appeals' ultimate determination that, viewing the trial as a whole, counsel provided petitioner meaningful representation. *Ambers*, 26 N.Y.3d at 320.

Both the Appellate Division and Court of Appeals recognized that defense counsel's strategy to retain the time-barred misdemeanor charges may have been intended to encourage the jury to reach a compromise verdict. *See Ambers*, 115 A.D.3d at 671; 26 N.Y.3d at 320. In contrast to the Court of Appeals decision in *People v. Turner*, here, defense counsel made no clear statement that he opposed a compromise verdict. *See* 5 N.Y.3d 476, 806. Rather, the trial record is bereft of any mention that the child endangerment charges are time-barred. Instead, counsel's emphasis on petitioner's strict parenting style during his opening statement, direct examination of the petitioner, and summation statement supports the theory that

counsel may have welcomed a compromise verdict. (*See, e.g.*, Tr. 400, 826, 848—51, 857, 884.) As such, petitioner has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. 486 U.S. at 689; *see also People v. Rivera*, 71 N.Y.2d 705, 709 (holding petitioner who failed to show "the absence of strategic or other legitimate explanations" for counsels' alleged shortcoming did not have viable claim to constitutionally ineffective counsel).

Further, as noted by the Court of Appeals, a compromise verdict would have been in petitioner's best interest. *Ambers*, 26 N.Y.3d at 320. If convicted of the misdemeanors alone, petitioner would have served no additional prison time. *Id.* And, given the overwhelming weight of the evidence presented at trial and outlined above, and the serious nature of the charges, it was unlikely that a jury would not convict petitioner of any crime. *Id.* Thus, defense counsel may have strategically attempted to keep the lesser misdemeanor charges in the trial to avoid the jury convicting petitioner of the more serious felony charges of second-degree rape and first- and second-degree course of sexual conduct. *Ambers*, 26 N.Y.3d at 320; *see also Evans*, 16 N.Y.3d at 925 (holding that it may be a reasonable strategy for a defense attorney not to seek dismissal of a time-barred lesser charge in order to provide the

jury the opportunity to render a compromise verdict where there was a multiple-count indictment). Such a strategy would have been well within the range of reasonable professional conduct.

As to *Strickland*'s prejudice requirement, and as noted by the Court of Appeals, petitioner has failed to show that he was harmed by counsel's failure to dismiss the time-barred misdemeanor charges. Instead, this court agrees with the Court of Appeals that no additional negative testimony against petitioner entered into trial as a result of counsel's failure to dismiss the misdemeanor charges, as the same testimony would have been admitted for the purposes of proving the felony charges against petitioner. *Ambers*, 26 N.Y.3d at 320. Further, petitioner did not stand to serve any additional jail time if he were convicted of the misdemeanor charges either on their own or in combination with greater charges. *Id.* In the former case, petitioner would have already served the requisite jail time, and in the latter case, any time for the misdemeanor charges would be served concurrently with the felony charges. *Id.*

In rejecting petitioner's Sixth Amendment claims, the state court did not come to a decision contrary to federal law, unreasonably apply federal law, or make an unreasonable factual determination based on evidence in the state court proceeding. New York's meaningful representation standard is coextensive with the *Strickland* standard, and the Court of Appeals applied

the proper rule in its analysis.  *See generally Rosario*, 601
F.3d 118; *see also Ambers*, 26 N.Y.3d at 317.  Further, the
court's conclusion is not opposed to any Supreme Court case
decided on "materially indistinguishable" facts.  *See Williams*,
529 U.S. at 413.  Thus, in light of the inarguable benefit to
petitioner of potentially receiving a compromise verdict, and no
clear statement that this strategy was *not* counsel's intention,
petitioner has not overcome the strong presumption that he
received adequate assistance.  Further, petitioner suffered no
apparent harm from retention of these lesser charges.  The state
court's conclusion is a reasonable application of clearly
established federal law.  Thus, this court must conclude that
petitioner has failed to establish either cause or prejudice as
required by *Strickland* and denies the petition as to
petitioner's ineffective assistance of counsel claim.

## II. Petitioner's Fourteenth Amendment Claims Due to Prosecutor's Summation Statements

### A.    Procedural Bar to Collateral Review

A federal habeas court will not review the merits of a
claim rejected by a state court if that decision "rests on a
state law ground that is independent of the federal question and
adequate to support the judgment."  *Beard v. Kindler*, 558 U.S.
53 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729
(1991)).  A state court's application of its own procedural

rules is typically sufficient "adequate and independent state grounds." *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Rosenfield v. Dunham*, 820 F.2d 52, 54 (2d Cir. 1987) ("When a state appellate court refuses to consider the merits of a petitioner's claims on account of his procedural failure to preserve his rights by objection at the time, then a federal court may not review those merits in a collateral habeas corpus proceeding."). This procedural bar to collateral review applies only when the last reasoned state court decision contains a "plain statement" that it is relying on a state procedural rule to decide the claim. *See Harris*, 489 U.S. at 262—65. In addition, a state's procedural rule is only "adequate" where it is firmly established and regularly followed. *See Walker v. Martin*, 562 U.S. 307, 316 (2011).

Here, the Appellate Division's decision contains a plain statement that it was rejecting petitioner's Fourteenth Amendment claim as to the prosecutor's summation on procedural grounds. *See Ambers*, 115 A.D.3d at 672 (describing claim as "unpreserved for appellate review, as the defendant either did not object to the remarks at issue, made only a general objection or failed to request further curative relief or make a timely motion for a mistrial on the specific grounds now asserted on appeal when the trial court sustained his objections or provided curative instructions"). In addition, the Second

Circuit has held that New York's contemporaneous objection rule is a firmly established and regularly followed procedural rule so long as it is not "exorbitant[ly] misapplied" and does not impose "an extreme, novel, or unforeseeable requirement without fair or substantial support in prior state law." *Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011). Petitioner does not argue that the Appellate Division's conclusion that he failed to preserve his Fourteenth Amendment claims was a misapplication of the rule, and the court sees no reason to so conclude.[14] Petitioner is correct that counsel in fact repeatedly objected to the prosecutor's suggestions that the petitioner was drunk during offense conduct and mischaracterization of Dr. Hoffman-Rosenfeld's opinion testimony. (Reply 19; Tr. 925-26.) Indeed, counsel contemporaneously moved for a mistrial in the face of the prosecutor's inflammatory or mischaracterizing statements. (*See, e.g.*, Tr. 926, 927, 932, 934.) Furthermore, at the conclusion of summations, petitioner's counsel indicated he would request a mistrial based on the prosecutor's statements, (*id.* at 934-35), but the trial court responded it would "clean a lot of that up" in its jury instructions, (*id.* at 936). The

---

[14]    Petitioner only appears to argue that the state court's ruling was "based on an unreasonable determination of facts," and that "[d]efault of a state procedural rule is not an adequate or independent reason to deny review" of a habeas petition. (Reply 12.)  For both these arguments, petitioner appears to cite only to persuasive authority from other circuits without explaining why the state court's finding of default was an unreasonable determination of facts or not an adequate or independent ground.

court addressed these comments, and petitioner's concerns, in its instructions and, upon charging the jury, asked the parties if either had objections to the charges. (*Id.* at 967.) Neither party lodged an objection or requested further instructions, and petitioner's counsel did not renew his motion for a mistrial. (*Id.*) Clearly, counsel for petitioner, when given the opportunity, indicated approval of the court's curative instructions. Thus, the state court's determination that there was a procedural bar to petitioner asserting his Fourteenth Amendment claim is based on an adequate independent state ground.

### B.    Collateral Review on the Merits

An independent and adequate state ground for rejecting a federal habeas claim will not bar federal review in all instances, however. A federal court may review a claim if the petitioner can demonstrate cause for his procedural default and resulting prejudice ("cause and prejudice"), or if he can show that a fundamental miscarriage of justice has taken place. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For "cause," a petitioner typically must show that some objective, external factor impeded his efforts to comply with the state's procedural rule. *See generally Strickler v. Greene*, 527 U.S. 263 (1999). Habeas petitioners commonly argue trial counsel was constitutionally defective under the

*Strickland* standard. *Murray*, 477 U.S. at 496. Here, because petitioner has failed to establish that he received constitutionally defective counsel under *Strickland*, he cannot show "cause." *See supra* Discussion, Part I. Thus, he cannot satisfy this requirement to overcome the procedural bar for his Fourteenth Amendment claims.

For "prejudice," a petitioner must demonstrate "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See Murray*, 477 U.S. at 494 (*quoting United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). Petitioner must also show that but for the error, there is a reasonable probability that the outcome of the case would have been different. *See Strickler*, 527 U.S. at 263 (1999). A court reviewing for prejudice may consider, "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) *cert. denied*, 506 U.S. 1023 (1992).

Here, petitioner has not shown that prosecutor's statements at summation so infected his trial with error to constitutional dimensions, nor has he established that the trial outcome would have been different but for the prosecutor's

summation. In general, summation statements will not support a due process violation claim. *See Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *United States v. Parker*, 903 F.2d 91, 98 (2d Cir. 1990). This is true even when a prosecutor's remarks are undesirable or even universally condemned. *See Darden v. Wainright*, 477 U.S. 168, 181 (1986). Petitioner can merely show that many of the prosecutor's summation statements were improper, not that they subjected petitioner to "substantial disadvantage" and infected the entire trial to constitutional dimensions. *See Tankleff v. Senkowski,* 135 F.3d 235, 253 (2d Cir. 1998) (finding prosecutor's numerous improper summation statements that were "short and fleeting" and corrected with the court's charge to the jury did not result in substantial prejudice arising to the level of a Fourteenth Amendment violation). Here, the court specifically addressed any potential prejudice to petitioner in his charge to the jury. (Tr. 940—41, 946—47, 951—52.) Moreover, given the overwhelming weight of evidence against petitioner, there is little doubt that the outcome of the trial would not have been different but for the prosecutor's statements. (*See, e.g.*, *id.* at 415, 418—20, 548—52, 720—28, 873—74.) Thus, petitioner fails to establish prejudice, as well.

Alternatively, petitioner is not entitled to federal review of the merits of his Fourteenth Amendment claim based on a fundamental miscarriage of justice theory. For review under this theory, petitioner must show that a constitutional violation has "probably resulted in the conviction of one who is actually innocent." *See Murray*, 477 U.S. at 495—96. "Actual innocence" means factual innocence, not a mere legal insufficiency of proof. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). This exception is permitted only for the "extraordinary case." *See Murray*, 477 U.S. at 96. Here, because petitioner has provided no new facts or evidence that would support a claim of actual innocence, he is not eligible for review of his procedurally barred claim.

Thus, this court concludes that the Appellate Division appropriately determined that petitioner's Fourteenth Amendment claims were procedurally barred, and New York's contemporaneous objection rule is an adequate and independent ground recognized under federal law to bar collateral review. *See generally Harris*, 489 U.S. at 262—65; see also *Ambers*, 115 A.D.3d at 672. And petitioner has not established any recognized exceptions to overcome his procedural bar. Moreover, even if he could, his Fourteenth Amendment claims are without merit.

**CONCLUSION**

For the foregoing reasons, the petition is denied in its entirety. The Clerk of Court is directed to serve a copy of this Order and an appeals packet on petitioner at his address of record, note service on the docket, and close the case.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 9, 2019

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York